# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

SHARI L.,

Plaintiff,

v.                                                      8:20-CV-1266
                                                        (ATB)

KILOLO KIJAKAZI,

Defendant.

MARK A. SCHNEIDER, ESQ., for Plaintiff
LUIS PERE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 5).

## I.    PROCEDURAL HISTORY

On November 26, 2018, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning as of that date.  (Administrative Transcript ("T") 218–24).  Plaintiff's application was denied initially on February 25, 2019.  (T. 131–33).  Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Brian LeCours on February 14, 2020.  (T. 31–83). At the hearing, the ALJ heard testimony from medical expert Ira H. Hymoff, Ph.D., the plaintiff, and vocational expert ("VE") Brian Daly.  (*Id.*).  On March 2, 2020, the ALJ

issued a decision denying plaintiff's claim.  (T. 15-24).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on October 6, 2020.  (T. 1-3).

II.  **GENERALLY APPLICABLE LAW**

A.  **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of

> the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions."  *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was 49 years old as of the date of the administrative hearing. (T. 47). She had completed school up to the seventh grade, and could read and write "to a limitation."  (T. 47–48).  Plaintiff successfully passed the examination to obtain her driver's license, and could drive herself as needed the "majority of the time."  (T. 48). She lived in a trailer with her friend and dogs.  (T. 61, 63).

Plaintiff was most recently employed as a part-time home care aide to her mother. (T. 48–49, 51).  She was also previously employed as a hotel housekeeper, prep cook, and dishwasher.  (T. 67). Her kidney disease, back pain and breathing issues prevented her from maintaining full-time employment.  (T. 49).  When overly exerted, plaintiff became "really short of breath."  (T. 51).  She experienced low back pain that radiated into her legs.  (T. 52).  Her back pain was "steady," but she got "comfort" out of pain

4

medication. (*Id.*). The hydrocodone that she took for back pain "slowed her down," but helped her get through the day. (T. 52–53). She did not take pain medication when she had to drive. (T. 53). Plaintiff also testified that her medical appointments would interfere with her ability to hold a job.

At home, plaintiff spent approximately seven hours out of the day sitting in a recliner. (T. 54). When she cleaned the dishes, she had to sit and take a break after ten minutes of standing. (*Id.*). Bending over "bothered" her. (*Id.*). Plaintiff testified that she was "not supposed to lift anything over ten pounds." (T. 60). Climbing stairs caused plaintiff to become short of breath. (T. 63). Her roommate performed most of the household responsibilities and chores. (T. 55). He also accompanied her grocery shopping, in order to lift heavy items. (T. 55–56). Plaintiff suffered from anxiety, which "kicked in" when she went shopping. (T. 56). The anxiety exacerbated her breathing. (*Id.*). She experienced panic attacks a couple times a week. (T. 57). She took naps every day to get her mind "off things." (T. 61). Plaintiff was not treating with any mental health providers. (T. 57). She denied having trouble getting along with people or following instructions. (T. 64).

Despite her breathing problems, plaintiff smoked "less than a pack" of cigarettes on a daily basis. (T. 57–58). This was down from her previous rate of smoking approximately two packs of cigarettes a day. (T. 59). She was trying to quit. (T. 57–59). Plaintiff had her left kidney removed within the past year due to kidney cancer, which also prompted her to quit smoking. (T. 59). She smoked marijuana "a couple times a week." (T. 58).

## IV.   **THE ALJ'S DECISION**

After reviewing the procedural history of plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since her application date.  (T. 17).  At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), spine disorder, chronic kidney disease (CKD), obesity, borderline intellectual functioning, anxiety disorder, and depressive disorder. (*Id.*).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment.  (T. 15).  In doing so, the ALJ specifically considered several listings, including Listings 3.02 (Chronic Respiratory Disorders), 6.05 (Chronic Kidney Disease), 6.06 (Nephrotic Syndrome), 6.09 (Complications of Chronic Kidney Disease), 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders) and 12.11 (Neurodevelopmental Disorders).

At step four, the ALJ found that plaintiff had the RFC for light work, as defined in 20 C.F.R. §§ 404.1567(b), except the work could only require her to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes or scaffolds (although she could climb on to two steps of a stepladder). (T. 19).  Plaintiff was further limited to working in an environment in which she was no more than occasionally exposed to extreme cold and pulmonary irritants such as strong fumes, odors, dust and gasses; and never exposed to hazardous conditions such as unprotected heights and dangerous machinery (although she could occasionally drive). (*Id.*).  Last, the ALJ limited plaintiff to performing unskilled tasks, defined as work

requiring little or no judgment to do simple duties that could be learned on the job in a short period of time. (*Id.*). She could perform work involving simple work-related decisions with few workplace changes. (*Id.*).

Next, the ALJ found that plaintiff was capable of performing her prior work as a housekeeper/cleaner, because it did not require the performance of work-related activities precluded by plaintiff's residual functional capacity. (T. 23). Furthermore, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 23–24). Thus, the ALJ found that plaintiff was not disabled. (T. 24).

## V.   **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1. Plaintiff's COPD met, or was medically equivalent to, the requirements of Listing 3.02A. (Plaintiff's Brief ("Pl.'s Br.") at 22–24) (Dkt. No. 17).

2. The ALJ improperly evaluated the medical source opinions of record. ("Pl.'s Br.") at 14–17).

3. Plaintiff was unable to work because of limitations caused by the combination of her impairments. (Pl.'s Br. at 17–27).

4. The ALJ did not correctly evaluate plaintiff's subjective statements concerning her symptoms and limitations. (Pl.'s Br. at 27-31).

5. The court should order that plaintiff's "prior claim" be reopened. (Pl.'s Br. at 31–32).

The Commissioner contends that the ALJ sufficiently evaluated the evidence of record, and that his decision was supported by substantial evidence. (Defendant's Brief

("Def.'s Br.") at 3–15) (Dkt. No. 20).  For the reasons stated below, this court agrees

with defendant and will dismiss the complaint.

## DISCUSSION

## VI.   <u>LISTED IMPAIRMENT</u>

### A.   **Legal Standard**

At step three of the disability analysis, the ALJ must determine if plaintiff suffers

from a listed impairment.  *See* 20 C.F.R. §§ 404.1520, 416.920.  It is the plaintiff's

burden to establish that his or her medical condition or conditions meet all of the

specific medical criteria of particular listed impairments.  *Pratt v. Astrue,* 7:06-CV-551

(LEK/DRH), 2008 WL 2594430 at *6 (N.D.N.Y. 2008) (citing *Sullivan v. Zebley,* 493

U.S. 521, 530 (1990)).  If a plaintiff's "impairment 'manifests only some of those

criteria, no matter how severely,' such impairment does not qualify." *Id.*  In order to

demonstrate medical equivalence, a plaintiff "must present medical findings equal in

severity to all the criteria for the *one* most similar listed impairment." *Sullivan v.*

*Zebley*, 493 U.S. at 531 (emphasis added).

### B.   **Application**

Plaintiff argues that the results of a pulmonary function test performed on

February 19, 2019 by consultative examiner Nader Wassef, M.D. were "so close" to

satisfying the listing requirements of 3.02A, that she should be considered to have met

said listing.  (Pl.'s Br. at 22–24).  For the following reasons, the court finds that

plaintiff's interpretation of the listing requirements under Section 3.02A as set forth in

her brief are flawed.  Furthermore, the record reflects that the ALJ properly determined

8

that plaintiff did not meet the criteria of this impairment.

Section 3.02 of the Listings uses spirometry results to determine whether an impairment meets or medically equals the requirements of the Listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(E)(1). A plaintiff's highest $FEV_1$ value is used to establish a severe impairment under Listing 3.02A. *Id.* Here, plaintiff was measured to be 5 feet, or 60 inches, tall without shoes on the date of the pulmonary function test.[1] (T. 676). Thus, her highest $FEV_1$ was required to be less than or equal to 1.05 to meet the requirements of Listing 3.02A. According to the test results recorded by Dr. Wassef, plaintiff's highest $FEV_1$ was 1.34 after the administration of bronchodilators, which was well above the required level of 1.05. (T. 676). Accordingly, the ALJ correctly determined that plaintiff's impairment did not meet or medically equal the requirements of Listing 3.02A, and remand is not warranted on this basis. *See Drake v. Comm'r of Soc. Sec.*, No. 15-CV-5604, 2018 WL 1556882, at *8 (E.D.N.Y. Mar. 29, 2018).

## VII.  RFC/EVALUATING MEDICAL EVIDENCE

### A.  Legal Standards

#### 1.  RFC

RFC is "what [the] individual can still do despite his or her limitations.

---

[1] Plaintiff argues that it is "reasonable to assume" that plaintiff is 5 feet 1 inch tall, based on the various measurements taken by different medical sources throughout 2018 and 2019. (Pl.'s Br. at 23 n. 9). The court does not find this argument persuasive, and agrees that the appropriate height to use was that taken by Dr. Wassef, contemporaneous with plaintiff's pulmonary function test. (T. 676). In any event, plaintiff still would not have met the listing requirements of 3.02A had the ALJ utilized the height that is proposed by plaintiff.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a

narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    **Evaluating Medical Evidence**

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and

11

supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

12

### B.    Application

Plaintiff contends that the ALJ failed to properly evaluate the medical source opinions of record under the new regulations, which specifically require an ALJ to explain how he considered the "supportability" and "consistency" factors for a medical opinion.  (Pl.'s Br. at 14–17).  In reaching his RFC determination, the ALJ considered a number of medical opinions related to plaintiff's physical and mental limitations.  On February 19, 2019, consultative examiner Dr. Wassef performed a physical examination of the plaintiff.  (T. 670–74).  Among his many findings, he observed that plaintiff appeared to be in no acute distress, with a normal gait and the ability to walk on her heels and toes without difficulty.  (T. 671).  Plaintiff exhibited a full squat and a normal stance.  (*Id.*).  She did not require help changing for the examination or getting on and off the examination table, and was able to "rise from the chair without difficulty."  (*Id.*).  Dr. Wassef also noted that, upon examination, plaintiff displayed an unlimited range of motion in her lumbar spine.  (T. 672).  Neurologically, plaintiff exhibited full strength in her upper and lower extremities.  (*Id.*).  Her hand and finger dexterity was intact, with full grip strength.  (T. 673).  Based on his examination findings, Dr. Wassef opined that plaintiff should "not be exposed to extremes in temperature, second hand smoke, perfumes, chemicals, or any type of respiratory irritants."  (*Id.*).  He further opined that plaintiff had "moderate" limitations in regards to "standing, walking, climbing and descending stairs, bending, squatting, lifting, sitting, and operating foot controls."  (*Id.*).

The ALJ explicitly considered Dr. Wassef's examination findings and medical

source statement in his written decision.  (T. 21).  In doing so, the ALJ found Dr. Wassef's "vague opinion" regarding moderate limitations in standing, walking, and sitting to be "unpersuasive beyond [the] RFC finding."  (*Id.*).  The ALJ noted that Dr. Wassef's examination findings were at odds with his opined limitations, to the extent Dr. Wassef found plaintiff to have "normal gait, intact motor strength, and generally unremarkable musculoskeletal findings," which were consistent with "light function." (*Id.*).

Next, the ALJ considered the February 21, 2019 opinion of state agency medical consultant M. Vazquez-Gonzalez, M.D. (T. 91–92).  Upon review of plaintiff's medical records and Dr. Wassef's opinion, Dr. Vazquez-Gonzalez opined that plaintiff could perform the equivalent of light work, with the exception that plaintiff should avoid "even moderate exposure to pulmonary irritants," due to her COPD.  (T. 21).  Dr. Vazquez-Gonzalez's opinion was subject to reconsideration at the initial review level by state agency consultant M. Angelotti, M.D.  (T. 104–06).  On July 25, 2019, Dr. Angelotti generally affirmed Dr. Vazquez-Gonzalez's findings, concluding that plaintiff had the capacity to perform light work with the exception of limiting her to "occasional" exposure to fumes, odors, and gasses in the context of her COPD.  (T. 104–05).

Upon review, the ALJ found the opinions of Dr. Vazquez-Gonzalez and Dr. Angelotti to be "generally persuasive."  (T. 21).  The ALJ acknowledged that plaintiff had a kidney removed during the relevant period, as well as her consistent reports of lower back pain.  (*Id.*).  However, the ALJ also noted that plaintiff did not require the

14

use of an assistive device to ambulate, and that diagnostic imaging during the period at issue demonstrated "mild" degenerative changes.  The ALJ also noted that, unlike Dr. Wassef, plaintiff's primary care provider did not perform range of motion or other testing to confirm the extent of plaintiff's impairment.  (*Id.*).  Based on these factors, the ALJ found the state agency consultants' opinions to be consistent with and supported by the record.  (*Id.*).

The record also contains a January 29, 2020 medical source statement ("MSS") prepared by plaintiff's treating provider, nurse practitioner ("NP") Jodi Hamel.  (T. 792–96).  NP Hamel identified plaintiff's diagnosis of degenerative disc disease of the lumbar spine, noting her "poor" prognosis and symptoms including low back pain and "severe" leg pain, "especially with walking/standing."  (T. 792).  NP Hamel indicated that plaintiff's objective signs included "pain with range of motion, lifting, [and] walking."  (*Id.*).  With respect to plaintiff's functional limitations, NP Hamel opined that plaintiff could sit for one to two hours at a time, and could only stand for ten minutes at a time before needing to change positions.  (T. 793).  In total, plaintiff could sit, stand, and/or walk for less than two hours out of an eight hour workday.  (*Id.*).  Plaintiff required a job that permitted shifting positions at will, and, according to the MSS, would also need to include periods of walking every minute during the workday.  (*Id.*).  Plaintiff would require unscheduled breaks every hour during the workday due to her muscle weakness, chronic fatigue, and pain.  (T. 793–94).  NP Hamel further opined that plaintiff could occasionally lift less than ten pounds, and never lift twenty pounds or more.  (T. 794).  She could rarely climb stairs, and never twist, stoop/bend,

crouch/squat, or climb ladders. (*Id.*).  NP Hamel stated that plaintiff was incapable of even "low stress" work, and that plaintiff's impairments and treatment would cause her to be absent from work more than four days per month. (T. 795).  Last, NP Hamel opined that plaintiff's COPD and "social anxiety" further limited her ability to work. (T. 796).

The ALJ considered NP Hamel's MSS, concluding that the opinion was not persuasive. (T. 21).  He cited to evidence that plaintiff was "doing well" after her kidney procedure, and that her COPD was well controlled with medication. (*Id.*).  He further noted that plaintiff routinely denied fatigue. (*Id.*).  The ALJ also recognized that plaintiff was prescribed narcotic pain medication for significant lower back pain, but compared this with her mild degenerative changes upon diagnostic study. (*Id.*).  Furthermore, the ALJ cited to plaintiff's decision to forgo physical therapy or pain management after the alleged onset date, and the fact that plaintiff did not treat with any specialist for her back issues. (*Id*).  For these reasons, the ALJ found NP Hamel's opinion to lack consistency with or support from the record. (*Id.*).

For the following reasons, the court finds that the ALJ properly considered the physical medical opinions of record, and his conclusions regarding their persuasiveness were supported by substantial evidence.  At the outset, there was nothing improper in the ALJ's conclusion that the opinions of Dr. Vazquez-Gonzalez and Dr. Angelotti were more persuasive than those produced by the examining sources of record.  It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency

consultant in disability claims. *See Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *7 (N.D.N.Y. Mar. 30, 2021) (acknowledging that under the old regulations, the report of a non-examining state agency medical consultant may constitute substantial evidence under the appropriate circumstances); see also Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819 at *5853 (discussing how under the new regulations, the opinions of all medical sources, including non-examining medical consultants, will be held to the same standard of persuasiveness of content). Here, the ALJ specifically identified other record evidence with which the state agency consultants' opinions were consistent, including plaintiff's mild diagnostic findings, her ability to ambulate without the use of an assistive device, and the lack of restrictive lumbar range of motion examinations throughout the record. (T. 21) (*See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (Consistency)). The ALJ also, although not as explicitly, cited to evidence which weighed into his consideration of the supportability factor, including the fact that Dr. Vazquez-Gonzalez's opinion was affirmed by Dr. Angelotti upon reconsideration, as well as their reliance on the examination findings of Dr. Wassef. (*Id.*). *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (Supportability)).

With respect to Dr. Wassef's medical source statement, the court does not find the ALJ's evaluation of this opinion to be flawed, or at odds with his ultimate RFC determination. At the outset, the ALJ properly noted that Dr. Wassef's opinion was vague to the extent that it referenced "moderate limitations." (T. 21). He also appropriately noted the inconsistencies between Dr. Wassef's largely benign

examination findings, and his ultimate conclusion for "moderate" postural limitations. *See Amanda S. v. Saul*, No. 5:18-CV-00473 (NAM), 2019 WL 3927452, at *11 (N.D.N.Y. Aug. 20, 2019) (citing *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes); *Rollain v. Berryhill*, No. 1:17-CV-00235, 2019 WL 1466296, at *4 (W.D.N.Y. Apr. 3, 2019) ("[T]o the extent that any consultative examiners provided internally inconsistent opinions, it is the role of the ALJ to reconcile such inconsistencies.").

Moreover, plaintiff's contention that Dr. Wassef's opinion does not support the ALJ's ultimate RFC determination is unpersuasive, as the courts in this district have frequently found that moderate limitations to a claimant's ability to walk, sit, or stand for prolonged periods are not inconsistent with an RFC for light work.  *See Moore v. Comm'r of Soc. Sec.*, No. 1:16-CV-270 (DJS), 2017 WL 1323460, at *8 (N.D.N.Y. Apr. 10, 2017) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects . . . is consistent with light work."); *Burpoe v. Berryhill*, 18 Civ. 3168, 2019 WL 3329818, at *15 (S.D.N.Y. July 24, 2019) (finding "that plaintiff was unable to engage in repetitive overhead activities, could not lift objects over 25 pounds and could not engage in prolonged walking, bending, standing or sitting" to be "limitations consistent with a light RFC");  *George A. v. Comm'r of Soc. Sec.*, 20-CV-0691, 2021 WL 2102527, at *8 (W.D.N.Y. May 25, 2021) (finding that the plaintiff had failed to establish that moderate limitations in prolonged sitting, prolonged standing, and walking precluded the performance of light

work) (collecting cases).

Thus, it was not improper for the ALJ to adopt the opinions of the consulting doctors into his RFC over the more restrictive opinion of NP Hamel.  Unlike those doctors, NP Hamel provided an opinion which proved to be inconsistent with plaintiff's longitudinal treatment history–primarily, NP Hamel's own treatment notes.  During the relevant period, NP Hamel's records generally indicated that plaintiff's back pain was effectively treated by her pain medication.  (T. 572, 580, 695, 700, 745, 800).  When plaintiff did complain of increased back pain, the record reflects that this was usually because she had stopped taking her medication (T. 566), or due to a flare-up that was sufficiently addressed by an increase in dosage of pain medication (T. 562–564, 559, 665).  NP Hamel noted that plaintiff "no longer wanted to get injections" in conjunction with plaintiff's report that her pain medication was "helping much better."  (T. 665).  Furthermore, physical examinations performed by NP Hamel were largely unremarkable throughout the relevant time frame, and do not support the restrictive limitations she subsequently imposed.  (T. 560, 563, 666, 690, 693, 696, 701, 746, 749, 801, 810).  *See Roman v. Colvin*, 278 F. Supp. 3d 671, 675 (W.D.N.Y. 2017) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.").

Moreover, the ALJ pointed out that Hamel could not point to any objective clinical observations, such as range of motion tests or diagnostic imaging, to support her restrictive findings, which otherwise contradicted evidence of plaintiff's full range of motion in the lumbar spine, and mild degenerative disc disease, illustrated elsewhere

in the record.  *See Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL
363682, at *10 (S.D.N.Y. Jan. 29, 2021) ("As to the required factors, the new rules
provide that, for supportability, the strength of a medical opinion is increased as the
relevance of the objective medical evidence and explanations increase.").  Accordingly,
this court finds no error in the ALJ's evaluation of the medical evidence as it pertained
to plaintiff's ability to perform the postural limitations of light work.

Plaintiff further contests the ALJ's RFC determination as it relates to
environmental limitations.  Specifically, plaintiff argues that the ALJ erred in limiting
plaintiff to no more than occasional exposure to pulmonary irritants.  (Pl.'s Br. at 24).
The parties dispute whether Dr. Wassef's opinion supports the RFC in this respect.[2] (T.
673).  Even assuming that Dr. Wassef's opinion called for plaintiff to never be exposed
to pulmonary irritants, his was not the only opinion of record on this issue.  Both Dr.
Vazquez-Gonzalez and Dr. Angelotti opined that plaintiff was less restricted from
exposure to pulmonary irritants; in fact it appears that the ALJ adopted Dr. Angelotti's
opinion that plaintiff be limited to "occasional" exposure.  (T. 92, 105).

In any event, the court finds that any error by the ALJ in assessing plaintiff's
environmental limitations was harmless.  "Where application of the correct legal
principles to the record could lead only to the same conclusion, there is no need to
require agency reconsideration." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)

---

[2]Defendants interpret Dr. Wassef's opinion to assert that plaintiff should not be exposed to
"extremes" of any type of respiratory irritants.  (Def.'s Br. at 9).  Plaintiff contends that this is an
absurd interpretation of Dr. Wassef's opinion, which states in relevant part, "[C]laimant should not be
exposed to extremes in temperature, second hand smoke, perfumes, chemicals, *or any type of
respiratory irritants*." (Plaintiff's Reply Brief at 1) (Dkt. No. 23) (emphasis added).

(alterations omitted) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ).

Here, based on the VE's testimony, the ALJ concluded that plaintiff could perform

several jobs which, according to the Dictionary of Occupational Titles, would not

expose him to the types of environmental factors contemplated by Dr. Wassef.  (T. 24).

*See* DICOT 222.687-022 Routing Clerk, 1991 WL 672133; DICOT 699.685-026

Power-Screwdriver Operator, 1991 WL 678865;[3] DICOT 249.587-018 Document

Preparer, 1991 WL 672349; DICOT 237.367-014 Call-out Operator, 1991 WL 672186;

DICOT 239.687-014 Tube Operator, 1991 WL 672235; DICOT 237.367-046

Telephone Quotation Clerk,[4] 1991 WL 672194; DICOT 249.587-014 Cutter-and-

Paster,[5] 1991 WL 672348.  Thus, any more restrictive "environmental limitations

imposed . . . would not have changed the ALJ's step five determination." *Kenyon v.*

*Comm'r of Soc. Sec.*, No. 16-CV-0260 (WBC), 2017 WL 2345692, *5 (N.D.N.Y. May

30, 2017) ("any error to include environmental limitations in the RFC determination

would be harmless error because the positions identified by the vocational expert do not

require exposure to atmospheric conditions such as dust, fumes, and gases"); *Rafferty v.*

*Colvin*, No. 12-CV-1554 (DNH), 2014 WL 1875339, *11 (N.D.N.Y. May 9, 2014)

("plaintiff's need to avoid concentrated exposure to respiratory irritants has only a

---

[3]In what appears to have been a typographical error, the ALJ referenced the wrong DICOT code numbers with respect to the occupations of Routing Clerk and Power-Screwdriver Operator in his written decision.  (T. 24).  The VE cited the correct DICOT code numbers during his testimony.  (T. 76).

[4]The ALJ and VE alternatively refer to this occupation as "Telephone Information Clerk." (T. 24, 77).

[5]The ALJ and VE alternatively refer to this occupation as "Trimmer."  (T. 24, 77).

minimal impact on her ability to perform sedentary work"). As a result, remand is not required on this basis.

Plaintiff also maintains that the ALJ erred in assessing the opinion evidence of record relative to plaintiff's mental limitations, resulting in an RFC that was not supported by substantial evidence.  Specifically, plaintiff argues that the ALJ erred by not explicitly accounting for the mild-to-moderate limitations assessed at step three of the sequential process, in the RFC determination.  However, it is well settled that an ALJ is not obligated to explicitly incorporate his step three findings into the RFC.  *See Reeves v. Comm'r of Soc. Sec.*, No. 19-CV-775S, 2020 WL 4696589, at *3 (W.D.N.Y. Aug. 13, 2020) ("The ALJ may take the same information finding a moderate limitation for 'paragraph B' criteria and conclude that Plaintiff's functional capacity is not impaired by that moderate limitation."); *Poole v. Saul*, No. 3:19-CV-00927, 2020 WL 2611230, at *16 (D. Conn. May 22, 2020) ("[A]ssessments of limitations and restrictions from mental impairment at steps two and three are not an RFC assessment. . . . to the extent Plaintiff contends that the ALJ was required to expressly include the moderate limitations (in concentration, persistence and pace) identified at Step 3 in the RFC determination, such argument lacks merit because the ALJ's findings at step 3 of the sequential analysis are not an RFC determination . . . .") (internal quotation marks and citations omitted). Accordingly, the ALJ did not per se err to any extent he failed to explicitly incorporate all of his step three findings into the RFC determination.

Furthermore, the Second Circuit has recognized that moderate limitations in work related functioning do not preclude a plaintiff from performing unskilled work.

*See Zabala v. Astrue*, 595 F.3d at 410 ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *Whipple v. Astrue*, 479 Fed. App'x 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).  This standard is reflected throughout the district courts.  *Martinez v. Comm'r of Soc. Sec.*, No. 3:16-CV-0908, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017) (finding that an RFC determination for unskilled work is not necessarily inconsistent with moderate mental limitations and noting that the Second Circuit has recognized that moderate mental limitations do not prevent a claimant from performing unskilled work); *Wells v. Colvin*, 87 F. Supp. 3d 421, 435–36 (W.D.N.Y. 2015) (finding that moderate limitations, even in the basic mental functions of unskilled work, are not inconsistent with the ability to perform unskilled work).  Thus, the court finds no apparent inconsistencies between plaintiff's mild-to-moderate mental limitations and the ALJ's conclusion that she could perform unskilled work.

Finally, the court finds that the ALJ did adequately incorporated his findings concerning plaintiff's mental impairments into the RFC determination. The ALJ explicitly considered the opinion evidence of record, rejecting some of the less restrictive findings of consultative examiner Dante Alexander, Psy.D. and state agency consultant H. Ferrin, Ph.D.  (T. 22).  Ultimately, the ALJ adopted the more restrictive

mental limitations as posed by Dr. Hymoff.  (T. 18–19).  He proceeded to craft an RFC with specific, nonexertional limitations reflecting Dr. Hymoff's opinion.  To this end, the court finds that the ALJ adequately accounted for plaintiff's severe impairment of borderline intellectual functioning, as well as her moderate limitations in attention, concentration and pace; understanding, remembering, or applying information; and adapting or managing oneself; in limiting her to (1) performing unskilled tasks defined as work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time, (2) work involving simple work-related decisions, and (3) few workplace changes.  As such, remand is not warranted on this basis.

## VIII.  EVALUATION OF SUBJECTIVE SYMPTOMS

### A. Legal Standards

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p,

24

81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[6]
The evaluation of symptoms involves a two-step process.  First, the ALJ must
determine, based upon the objective medical evidence, whether the medical
impairments "could reasonably be expected to produce the pain or other symptoms
alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the
claimant's] alleged functional limitations and restrictions due to pain or other
symptoms can reasonably be accepted as consistent with the [objective medical
evidence] and other evidence to decide how [the claimant's] symptoms affect [her]
ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter
alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[7]

If the objective medical evidence does not substantiate the claimant's symptoms,
the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d
Cir. 2013) (citing superceded SSR 96-7p).  The ALJ must assess the claimant's
subjective complaints by considering the record in light of the following symptom-
related factors: (1) claimant's daily activities; (2) location, duration, frequency, and
intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type,
dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5)

---

[6] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather,
the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the
claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will
remain consistent with the terms as used by the Commissioner.

[7] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was
superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.
The 2016 ruling has removed the emphasis on "credibility."

other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

## B.    Application

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision."  (T. 20).  Plaintiff challenges this conclusion, arguing that her subjective complaints of disability should have been fully credited because "none" of the examining physicians opined that she exaggerated her impairments and limitations, and due to a lack of medical evidence indicating that plaintiff "did not accurately describe her symptoms and limitations to the ALJ or the medical providers."  (Pl.'s Br. at 33).

Notwithstanding plaintiff's argument, the court finds no basis to disturb the ALJ's evaluation of plaintiff's subjective complaints, which is supported by record-based explanations throughout the ALJ's written decision.  *See  Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (A court may not "second-guess" the ALJ's decision to discount a claimant's statements about her symptoms "where the ALJ identified specific record-based reasons for [her] ruling[.]").  The ALJ recognized plaintiff's complaints of disabling back pain and the corresponding limitations.  However, the ALJ found that these complaints were inconsistent with imaging of plaintiff's spine–showing mild findings–and the apparent management of her pain with medication prescribed by her primary care provider.  (T. 19–21).  The ALJ also considered plaintiff's reported difficulty breathing compared to self-reports to medical providers that her COPD was "well controlled," and her denial of fatigue, chest pain, or shortness of breath.  (T. 20).  Furthermore, the ALJ recognized plaintiff's kidney cancer diagnosis and the surgical removal of one of her kidneys.  (*Id.*).  He noted that plaintiff reported to be "feeling good" at her surgical follow-up appointment, and was continuing to do well in relation to her chronic kidney disease as of January 2020.  (*Id.*).  This aligns with plaintiff's hearing testimony that she did not feel any worse since the surgery.  (T. 59–60).

An ALJ's evaluation of a social security claimant's subjective symptoms "is entitled to substantial deference by a reviewing court." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 645 (S.D.N.Y. 2019); *see also Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984) ("If the [ALJ's] findings are

27

supported by substantial evidence . . . the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.").  In light of the substantial deference owed to the ALJ's determination on this issue, the court finds no error in the evaluation of plaintiff's subjective symptoms that would warrant remand.

## IX.   REOPENING PRIOR APPLICATION

### A.   Legal Standards

"Where a claimant seeks to reopen a claim where a final decision has been rendered, the Commissioner may refuse such as request under the doctrine of res judicata."  *Saxon v. Astrue*, 781 F. Supp. 2d 92, 99 (N.D.N.Y. 2011) (*citing Dunn v. Astrue*, No. 08-CV-0704, 2010 WL 376390, at *3 (W.D.N.Y. Jan. 27, 2010)). "The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus federal courts lack jurisdiction to review the administrative decision not to reopen a previous claim for benefits." *Id.* (citing *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)). "There are two circumstances in which the federal courts may review the Commissioner's decision not to reopen a disability application: (1) where the Commissioner has constructively reopened the case; and (2) "where the claimant has been denied due process." *Id*. (quoting *Byam*, 336 F.3d at 179). Although an ALJ can be deemed to have constructively reopened an application where he reviews the entire record and renders a decision on the merits, "[a] matter is not constructively reopened when the ALJ merely discusses prior proceedings and evidence to describe a claimant's background." *Id.* (citing *Grant v. Shalala*, No. 93-CV-0124, 1995 WL 322589, at *7 (W.D.N.Y. Mar. 13, 1995)).

28

## B.    Application

Plaintiff argues that this court should "order the Commissioner to reopen [plaintiff's] prior claim" for disability benefits, because plaintiff's prior application was denied "within the one-year period required for automatic reopenings[,]" and further because there is "good cause" to do so pursuant to 20 C.F.R. §§ 416.488 and 416.489. (Pl.'s Br. at 33–34).  At the outset, plaintiff's request is misplaced because it seeks to have this court review the merits of the ALJ's failure to reopen her prior claim, without first addressing the jurisdictional issue presented by her request.  Accordingly, the court must first determine whether it has subject matter jurisdiction to review the ALJ's decision not to reopen her prior application in the first place.

Plaintiff's request was rather vague at the administrative level.  On February 7, 2020, plaintiff's counsel submitted a pre-hearing brief to the ALJ.  (T. 379–81).  In that brief, counsel requested that the ALJ "determine that [plaintiff] has been disabled since her 2017 application date."  (T. 381).  He stated it was his belief that the ALJ could "reopen this prior claim because [plaintiff] re-applied within one year after that denial." (*Id.*).

At the February 14, 2020 administrative hearing, the ALJ acknowledged plaintiff's request to reopen plaintiff's April 5, 2017 prior application.  (T. 34).  The ALJ questioned the existence of an interim application submitted by plaintiff on February 8, 2018, and whether the ALJ could reopen "two applications back."  (*Id.*). Plaintiff's counsel stated his belief that the request was proper as long as the new application was from within one year, and that based on his review of the record he

29

"could not tell . . . how many previous claims there were." (T. 34–35). He further acknowledged that plaintiff lost the appeal relating to her March 6, 2015 application, thus the reopening of that application would be barred by the doctrine of res judicata. (T. 35). The ALJ then stated that he was going to "reserve decision" on the reopening issue. (*Id.*).

The ALJ's March 5, 2020 decision does not explicitly address the plaintiff's request to reopen any prior applications. (T. 15–24). However, it is apparent that the ALJ impliedly denied plaintiff's request to do so, to the extent he found that plaintiff had not been under a disability since November 26, 2018, the date of her pending application. (T. 24). In a subsequent request for review of the hearing decision filed with the Appeals Council, plaintiff's counsel did not specifically raise this issue, but generally relied on his pre-hearing brief to the ALJ. (T. 216).

As previously discussed, the court is precluded from reviewing the ALJ's decision not to reopen plaintiff's prior applications unless the Commissioner constructively reopened those cases, or if plaintiff was denied due process. Notably, plaintiff does not allege that either of these two exceptions apply to the instant matter. *See Mushtare v. Astrue,* No. 7:06-CV-1055 (LEK/VEB), 2009 WL 8633200, at *13 (N.D.N.Y. July 27, 2009), *report and recommendation adopted*, 2009 WL 2496453 (N.D.N.Y. Aug. 12, 2009) (considering plaintiff's failure to argue either of the relevant exceptions as a basis for finding that the court lacked jurisdiction to review the denial). Moreover, the record does not reflect that plaintiff would be successful had she pursued either argument. With respect to constructive reopening, the ALJ neither reviewed

30

plaintiff's prior disability claims nor made a decision on their merits.  At the hearing, the ALJ merely discussed the existence of plaintiff's prior applications, and considered whether he would even have the authority to reopen them.  At most, the ALJ indicated that he would look into the request to reopen by plaintiff.  Nonetheless, it is clear that the ALJ's ultimate disability determination was limited to the plaintiff's most recent application, alleging disability beginning November 26, 2018.  On these facts, the court does not find that the ALJ constructively reopened any of plaintiff's prior disability claims. *See Benner v. Comm'r of Soc. Sec.*, No. 18-CV-6679, 2020 WL 6548539, at *4 (W.D.N.Y. Nov. 6, 2020) (finding the ALJ did not constructively reopen plaintiff's prior SSI application where the ALJ "merely discussed the prior SSI applications and mused whether an SSI claim was filed in relation to the instant application and, if not, why.").

Nor does the record support that plaintiff was denied due process.  "Due process violations occur when a claimant does 'not receive meaningful notice [or] an opportunity to be heard.' " *Bessette v. Comm'r of Soc. Sec.*, No. 09-CV-735 (TJM/DRH), 2010 WL 5677184, at *5 (N.D.N.Y. Dec. 14, 2010) (quoting *Parker v. Caifano*, 664 F.2d 1199, 1203 (6th Cir.1981)).  Based on the record before this court, there is no basis on which to conclude that plaintiff's due process rights were violated relative to any of her prior applications.  Accordingly, the court does not have the jurisdiction to review the Commissioner's decision not to reopen plaintiff's earlier applications.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's

complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**


Dated: February 24, 2022

Andrew T. Baxter
U.S. Magistrate Judge